E-FILED
Wednesday, 16 October, 2024  02:31:12 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HENRY'S ON MAIN, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-cv-3040 |
| | ) | |
| VILLAGE OF ROCHESTER and | ) | |
| JOSEPH SUERDIECK, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendants Village of Rochester's and Joseph Suerdieck's Motion to Dismiss [Doc. 13].

## I.      FACTUAL BACKGROUND

In its Complaint, Plaintiff Henry's on Main, LLC ("Henry's") alleges it applied for a liquor license from Defendant Village of Rochester ("Village" or "Rochester") in April 2023. (Doc. 1 at 1). Defendant Joseph Suerdieck is the elected Village President and serves as the Liquor Commissioner of the Village. (*Id.*) In that capacity, Suerdieck is responsible for reviewing applications submitted for liquor licenses in Rochester and granting or denying those licenses. (*Id.*)

Plaintiff filed an application for a Rochester Class R-G liquor license on or about April 11, 2023. (*Id.*) Between April 11, 2023 and May 22, 2023, Plaintiff filed supplementary documentation related to the review of the application. (*Id.*) Defendant

Suerdieck assigned Rochester legal counsel to communicate with Henry's to collect application materials throughout the application process because the principal of Henry's, Mark Clemens, was engaged in the eviction of the current license holder, Suerdieck's son, at the applicant address. (*Id.* at 2). Suerdieck stated he assigned the "fact-finding" of Plaintiff's application to legal counsel to avoid the "perception of impropriety," consistent with state law and local ordinances. (*Id.*)

Upon receipt of the supplementary materials from Plaintiff, Village Attorney Stephen Hedinger advised Plaintiff that nothing further was needed to complete the application process. (*Id.*) At the June 12, 2023 Village Board Meeting, Clemens addressed the Board concerning his application, stating:

> I would like to bring up to the Board and the [Village], this process has been corrupt from the beginning and the rules and the hooks that you're allowing others to bypass and because the situation with the President's son being kicked out for not paying his bills, now all of a sudden we are following every letter of the law all the way through the point you keep tabling it two months in a row.

(*Id.*) Suerdieck characterized Clemens statements as "disparaging," "rotten," and "not very factual." (*Id.*)

On June 13, 2023, Ben Suerdieck, the Village President's son, was evicted from the applicant address and ordered to pay nearly $8,000 in damages to the owner. (*Id.*) Defendant Suerdieck confirmed that his son forfeited possession of the applicant address on June 13, 2023, and was required to pay damages to Clemens. (*Id.* at 3).

On June 16, 2023, Clemens and Defendant Suerdieck spoke about Plaintiff's application at Suerdieck's place of business. (*Id.*) The conversation was polite and calm

according to Suerdieck. (*Id.*) On June 20, 2023, Defendant Suerdieck drafted a letter to Plaintiff denying the application for the Class R-G liquor license, stating:

> The application you have submitted on behalf of Henry's on Main LLC for an R-G Liquor License at 320 E Main St, Rochester, IL 62563 has been reviewed. I have determined that your application has been denied.

(*Id.*) The letter did not provide an explanation or basis for the denial. (*Id.*) Plaintiff appealed that denial to the Illinois Liquor Control Commission. (*Id.*) During those proceedings, Defendant Suerdieck testified that, in May of 2023, after Ben Suerdieck's business at the applicant address had been closed for 90 days, a liquor license was available in Rochester. (*Id.*) Suerdieck claimed he denied the application for a liquor license because Plaintiff's principal, Mark Clemens, did not possess the requisite "good character" to be issued a license. (*Id.*) The State Liquor Commission unanimously reversed the denial of the license by Defendant Suerdieck, finding that the evidence presented by him did not meet the threshold for denial of license. (*Id.*)

In its three-count complaint, Plaintiff alleges Defendants retaliated following Clemens's appearance before the Village Board, in violation of the First Amendment of the U.S. Constitution, Article I, Section 4 of the Illinois Constitution, and Illinois state law (Count 1). (*Id.* at 3-4). Plaintiff further asserts Defendants violated its First Amendment right to petition the government for the redress of grievances and retaliated by denying the application for a liquor license (Count 2). (*Id.* at 4). In Count III, Plaintiff alleges Defendants denied him the equal protection of the laws guaranteed by the Fourteenth Amendment by imposing different standards on him than on other applicants and holders of liquor licenses. (*Id.* at 5).

## II.    DISCUSSION

Defendants contend there are several reasons why the complaint should be dismissed. First, Defendants allege Counts I and II must be dismissed because Plaintiff cannot establish a First Amendment retaliation claim and the counts are redundant. Defendants assert Count III must be dismissed because Plaintiff has no equal protection right to be issued a liquor license. Defendants seek dismissal of the claims against Defendant Surdieck because he is entitled to absolute immunity and the Village should be dismissed as a defendant because Plaintiff does not plead any recognized theory of *Monell* liability.

In response, Plaintiff alleges Defendant misconstrues its First Amendment claims as asserting a deprivation of a right to a liquor license when Plaintiff actually alleges "the denial of the application for a liquor license is a violation of Plaintiff's rights of free speech" and "right to petition the government for redress of grievances," when "Defendants retaliated against Plaintiff[] because of its presentation to the Village Board." Plaintiff further contends it has plausibly alleged a "class of one" equal protection claim because "Defendants subjected Plaintiff to a far different standard and a far different level of scrutiny than" other liquor license applicants in the Village. Finally, Plaintiff asserts Suerdieck is not entitled to absolute immunity and Plaintiff has adequately alleged *Monell* claims against the Village.

### A.  Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a

motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. *Id.* To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing she is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the court can reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a claim. *See id.* The complaint must do more than assert a right to relief that is "speculative." *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### B. Constitutional Rights at Issue

Defendants argue Plaintiff has no right to the issuance of a liquor license simply because he completed the application. According to Defendant, Plaintiff cannot show the required deprivation of a right to assert a claim under 42 U.S.C. § 1983 when there is no constitutionally protected right to sell liquor. However, Plaintiff alleges Defendants violated its constitutional right of free speech, right to petition the government for the redress of grievances, and right of equal protection. A violation of the equal protection clause "does not require proof of a deprivation of life, liberty, or property." *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995). Because none of the constitutional rights asserted

require Plaintiff to establish the deprivation of a right, Defendants' Motion to Dismiss on that basis is denied.

### C. Absolute Immunity

Defendants next contend Joseph Suerdieck is entitled to absolute immunity. While acknowledging that no Seventh Circuit case has specifically addressed whether absolute immunity applies to a decision not to issue a liquor license in the first instance, Defendants argue since absolute immunity applies to nearly all decisions made by a local liquor commissioner, such immunity must apply to the initial decision to deny a liquor license. Plaintiff contends absolute immunity is inapplicable because Plaintiff has not asserted a due process claim.

Defendants cite *Reed v. Vill. of Shorewood*, 704 F.2d 943 (7th Cir. 1983) for the proposition that a local liquor commissioner is a "type of first-line adjudicator, like a trial judge or his counterpart in administrative law," and is, therefore, entitled to absolute immunity in decisions to renew liquor licenses. *Id.* at 951-53. Defendants also rely on *Killinger v. Johnson*, 389 F.3d 765 (7th Cir. 2004), wherein the Seventh Circuit considered a due process claim based on two relatively brief suspensions of a liquor license and followed *Reed* in determining that absolute immunity applied to decisions "to renew or revoke a liquor license." *Id.* at 770.

However, in *Brunson v. Murray*, 843 F.3d 698 (7th Cir. 2016), the Seventh Circuit found it "necessary to overrule one holding in *Reed v. Village of Shorewood* and to disapprove one phrase of *dictum* in *Killinger v. Johnson*" in denying absolute immunity to local liquor commissioners in decisions to renew licenses due to developments in both

federal and state law. *Id.* at 713-14. The plaintiff in *Brunson* owned a package liquor store and asserted that city officials violated his rights by refusing to renew his liquor license. *Id.* at 700. The mayor, who was also the local liquor commissioner, refused to consider Brunson's application for a routine renewal of his liquor license. *Id.* at 701. The Seventh Circuit in *Brunson* determined that the district court had correctly limited its discussion of immunity to the plaintiff's due process claim because the "absolute immunity defense does not affect [the plaintiff's] broader equal protection claim because his claim of harassment extends beyond Schauf's conduct as local liquor control commissioner to his nonjudicial, nonlegislative conduct as mayor. As in *Reed*, when a defendant is both mayor and local liquor commissioner, we separate out claims that primarily concern the defendant's actions in the mayoral role." *Brunson*, 843 F.3d at 710 n.6 (internal quotation marks and citation omitted).

The Seventh Circuit observed that "[t]he key holding expressed in *Reed* based its grant of absolute immunity for license renewal decisions on a view of Illinois law that is no longer accurate and on a broad view of absolute immunity that the Supreme Court has narrowed." *Id.* at 710. The court explained that "the action of renewing or not renewing an Illinois liquor license is a bureaucratic and administrative act—not a judicial act." *Id.* This is in contrast to a local liquor commissioner's decision to suspend or revoke a license because of the procedural formalities and protections involved in those decisions, including requirements of notice, a hearing, a record, and a reasoned decision. *Id.* at 710-11. Because such proceedings are akin to a judicial act, the liquor commissioner

would be entitled to absolute immunity regarding the decision to suspend or revoke a license. *Id.* at 710.

The Seventh Circuit noted there are six factors that are "characteristic of the judicial process" which should be considered in determining the issue of absolute immunity. *Id.* at 711. These include "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Id.* at 712 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985)). The court in *Brunson* determined that the factors weighed decisively against absolute immunity for a local liquor commissioner's decision on whether to renew a liquor license. *Id.* at 712. It found that the risk of harassment was minimal where the decision to renew is "automatic" and "not discretionary." *Id.*

Moreover, while procedural safeguards exist in cases of license suspensions, those protections do not apply to actions on license renewals. *Id.* The Seventh Circuit noted that the local liquor commissioner in *Brunson* was an elected mayor and thus not insulated from political influence. *Id.* As for the fourth and fifth factors, the court found no indication that precedent was important in the administrative renewal process nor that the process was adversarial or even based on a record of evidence. *Id.* The court determined that the only factor supporting absolute immunity is that errors could be corrected on appeal to the state Commission, though that factor was somewhat limited

based on the standard of review. *Id.* It concluded that "[t]he *Cleavinger* factors thus weigh heavily against extending absolute immunity to an Illinois local liquor commissioner's action on whether to renew a license, even while they weigh in favor of absolute immunity for decisions to revoke or suspend licenses." *Id.* at 713.

As previously noted, based on language in *Brunson*, Plaintiff alleges Suerdieck's absolute immunity defense does not apply to Plaintiff's claims under the First and Fourteenth Amendment. The crux of the equal protection claim in *Brunson* is that the mayor, along with other defendants, "harassed Brunson under color of state law in an attempt to drive him out of business for [the mayor's] own personal gain or other illegitimate purposes." *Id.* at 705. Here, Plaintiff alleges that First Amendment and equal protection rights were violated because of Mark Clemens's presentation to the Village Board.

Defendants cite *Gianessi v. City of Pekin*, 52 F. App'x 265 (7th Cir. 2002) in arguing it is irrelevant to the issue of absolute immunity if the mayor-liquor commissioner acted with improper motives. The plaintiff in *Gianessi* claimed the mayor was motivated by the applicant's relationship with the mayor's ex-wife and his support of the mayor's political opponent. *Id.* at 267-68 ("As *Reed* established, Tebben's actions as liquor commissioner in deciding upon liquor applications (irrespective of the fact that he was also mayor) were judicial, and thus entitled to absolute immunity regardless of whether his actions were improperly motivated."). The Court is not persuaded by Defendants' reliance on *Gianessi*, which predates *Brunson* and relies on *Reed*.

While the Court recognizes there are differences between a local liquor commissioner's act of determining whether to issue a liquor license in this case versus the decision whether to renew a liquor license in *Brunson*, the *Brunson* factors weigh against absolute immunity in both cases. The risk of harassment appears to be minimal in what is normally a routine decision to issue a liquor license. In considering whether a liquor commissioner is insulated from politics, Suerdieck testified that he serves as liquor commissioner by virtue of his election as Village President. While it may seem obvious that Suerdieck was acting in the capacity of Rochester's liquor commissioner in denying Plaintiff's liquor license, the complaint can be plausibly interpreted as alleging Suerdieck was also acting is his role as Village President.[1] Suerdieck is referred to as the "Village President" or "President Suerdieck" throughout the hearing and in the Illinois Liquor Control Commission's Order reversing the Rochester Commissioner's decision. There are limited procedural safeguards as to the issuance of liquor licenses and precedent does not appear to be important when, as here, an application can be denied in a terse letter with no reason provided. Based on that denial, the process is not adversarial or based on record evidence. As in *Brunson*, the sole factor that supports absolute immunity is that errors can be corrected on appeal to the state Commission. Thus, the foregoing factors

---

[1] The Court is considering the administrative record of the Illinois Liquor Control Commission in ruling on the motion to dismiss. A motion to dismiss under Rule 12(b)(6) can be based on only "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021). Plaintiff intended to attach the Final Administrative Decision to its complaint but did not do so due to an apparent oversight. (Doc. 1 at 3). The administrative record is attached to Defendants' motion to dismiss and is critical to the complaint and referred to in it.

weigh decisively against absolute immunity for a local liquor commissioner's action on whether to issue a liquor license.

Additionally, Suerdieck's decision could also be interpreted as being motivated by personal considerations given that Plaintiff's principal, Mark Clemens, evicted the prior license holder, Surdieck's son, from the applicant address one week before Suerdieck denied the application. While addressing the Village Board meeting eight days before Suerdieck's decision, Clemens alleged that the process was "corrupt from the beginning." Suerdieck later described Clemens's statements as "disparaging," "rotten," and "not very factual." Four months later, Suerdieck testified at the hearing that Clemens lacked the character to have a liquor license. When the allegations are viewed in a light most favorable to Plaintiff, the Court finds Suerdieck's act of denying Plaintiff's application for a liquor license is analogous to the assertion in *Brunson* that defendant harassed the plaintiff to drive him out of business for illegitimate purposes such as the mayor's personal gain. Viewed through that lens and to the extent that absolute immunity is even potentially applicable to Plaintiff's claims, the Court finds absolute immunity does not apply because Suerdieck's actions "do not involve acts that are analogous to those performed by judges." *See Brunson*, 843 F.3d at 712. Plaintiff's First and Fourteenth Amendment claims can plausibly be construed as alleging Suerdieck was solely motivated by personal animus or revenge in denying Plaintiff's application for a liquor license. Therefore, Defendants' Motion to Dismiss is denied.

### D. Village of Rochester and *Monell* Liability

Defendants next contend that the Village should be dismissed as a party because Plaintiff does not plead any recognized theory of *Monell* liability. Plaintiff neither alleges the existence of a written policy nor the existence of any widespread practice. Furthermore, Defendants assert that a local liquor commissioner is not a final policymaker on the issuance of liquor licenses for purposes of *Monell* liability. Citing *Rasche v. Village of Beecher*, 336 F.3d 588 (7th Cir. 2003), Plaintiff claims that a "municipal action was taken with 'deliberate indifference' as to its known or obvious consequences," such that "a facially lawful municipal action" has resulted in the violation of Plaintiff's constitutional rights. Plaintiff contends Defendants did this by denying Plaintiff a liquor license (a facially lawful municipal action) in a discriminatory, vindictive, and retaliatory manner (by subjecting Plaintiff to different "character standards" than other applicants and license-holders following Plaintiff's principal's eviction of the liquor commissioner's son). *Id.* at 599.

While there are multiple types of *Monell* liability, Plaintiff proceeds on the allegation that the constitutional injury was caused by an individual with final policymaking authority. *See Orozco v. Dart*, 64 F.4th 806, 823 (7th Cir. 2023) (discussing the requirements to establish a *Monell* claim). Defendant alleges a local liquor commissioner is not a final policymaker for purposes of *Monell* liability. The court in *Brunson* appeared to suggest that a mayor-liquor commissioner qualifies as a final policymaker. *See Brunson*, 843 F.3d at 715 ("The district court rejected Brunson's argument that the city was liable on the due process claim for Schauf's actions as a final

policymaker for Bridgeport. The court's conclusion might well raise an eyebrow, *see Reed*, 704 F.2d at 953 (official acts of municipal officials are acts of the municipality for purposes of § 1983 liability, even if official is entitled to immunity from individual liability), but Brunson has waived the point by not arguing it on appeal."). While the Seventh Circuit's statement in *Brunson* is dicta, the Court agrees and concludes that as Village President and liquor commissioner, Suerdieck had final policymaking authority for the Village of Rochester. Indeed, Suerdieck's decision was the final decision of the Village of Rochester. Accordingly, the Court denies Defendants' Motion to Dismiss on this basis.

Defendants next allege that if Plaintiff's claim against Suerdieck was intended as an official capacity claim, then the *Monell* claim against the Village should be dismissed as redundant. While Plaintiff does not specify in its complaint whether it is suing Suerdieck in his official capacity or his individual capacity, "[a]ctions against individual defendants in their official capacities are treated as suits brought against the government entity." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). Thus, to the extent that Plaintiff has filed suit against Suerdieck in his official capacity, the Court will construe any such claims as being brought against the Village.

### E.  First Amendment Free Speech Retaliation Claim

In Count 1, Plaintiff alleges retaliation by Defendant in violation of the First Amendment of the United States Constitution and Article 1, Section 4 of the Illinois Constitution based on Clemens's presentation to the Village Board. "To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter his free

speech; and (3) his protected speech was at least a motivating factor for the deprivation." *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019). Unless there is some indication otherwise, provisions of the Illinois Constitution are to be construed in harmony with similar provisions of the United States Constitution. *People v. Tisler*, 103 Ill.2d 226, 244-46 (1984). Therefore, the Court will utilize a single analysis.

For purposes of this motion, Defendants agree Plaintiff was engaged in a protected First Amendment activity by speaking at a Village Board meeting. Defendants contend Plaintiff suffered no deprivation of any recognized right given that it had no right to be issued a liquor license. Furthermore, Defendants argue Plaintiff cannot plausibly allege a causal link between Mark Clemens's statement about a "corrupt" process and the denial of the liquor license application.

Plaintiff is not claiming it had a constitutional right to be issued a liquor license. Rather, Plaintiff is alleging Defendants retaliated against Plaintiff because of its principal's statements to the Village Board. The denial of Plaintiff's liquor license occurred one week and one day after Clemens's statements to the Village Board. The denial of the liquor license occurred one week after Suerdieck's son was evicted from the applicant address. "Although suspicious timing will rarely be sufficient in and of itself to create a triable issue, if the employee's speech and the adverse employment action are close in time, it may be probative of a casual link between the two events." *Sweet v. Town of Bargersville*, 18 F.4th 273, 279 (7th Cir. 2021) (internal quotation marks and citation omitted). While there is no set rule, the Seventh Circuit typically allows "no more than a few days to elapse between the protected activity and the adverse action." *Id*. Here,

Plaintiff's protected speech occurred within "no more than a few days" of the adverse action. The fact that Suerdieck's son was evicted within that time frame further bolsters Plaintiff's claim. While Defendants dispute Plaintiff's assertion based on Suerdieck's testimony, the Court cannot accept Defendants' version of events at this stage of the litigation. Moreover, the State Liquor Control Commission did not agree that the liquor license should be denied because Clemens had "bad character." When the facts are viewed in a light most favorable to Plaintiff, the Court finds Plaintiff has plausibly alleged a causal link between its protected activity and the denial of the liquor license application. Therefore, Defendants' Motion to Dismiss Count 1 is denied.

### F. First Amendment Petition for Redress of Grievances Claim

In Count 2, Plaintiff alleges the denial of the application for a liquor license is a violation of its right to petition the government for redress of grievances guaranteed by the First Amendment. In representing Plaintiff, Mark Clemens appeared at a Village Board meeting to discuss the application for a liquor license and to petition for redress of his grievance relating to the handling of that application. Plaintiff contends Defendants retaliated because of that presentation. "As with the free speech claim, to prevail in an access to the courts or petition for redress of grievances retaliation claim, [plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009).

Defendants contend Count 2 should be dismissed because Plaintiff has asserted duplicative claims in that Counts 1 and 2 allege the same facts, the same injury, and same theory of retaliation. Defendants further argue Count 2 must be dismissed because the allegations of the complaint confirm that Plaintiff successfully exercised the First Amendment right to petition the government.

The Court is unable to conclude that Count 2 is redundant of Count 1. The First Amendment protects freedom of speech and the right to petition the government for a redress of grievances. Defendants cite no authority for the proposition that Plaintiff must choose to proceed under one right or the other. In Count 1, Plaintiff appears to be alleging that it was retaliated against because of the content of Clemens's speech. In Count 2, Plaintiff appears to be alleging that it was retaliated against based on Clemens's petitioning the Village Board for redress of grievances. Those are similar but not duplicative claims.

The Court also has no basis to dismiss Plaintiff's retaliation claim simply because Plaintiff successfully exercised its First Amendment right to petition the government. Defendants cite *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056 (7th Cir. 2020), wherein the plaintiffs alleged their right to petition the government was violated when they were not permitted to publicly comment about election integrity concerns at a meeting before the certification of precinct returns. *Id.* at 1063-64. *Shipley* is inapposite because their "only complaint is that they were not able to petition the Board at their desired time and place, not that they were prohibited from petitioning the government." *Id.* at 1064. Unlike Plaintiff here, the plaintiffs in *Shipley* did not assert a retaliation claim.

The fact that Clemens was permitted to speak does not mean Defendants did not retaliate against him.  For these reasons, Defendants' Motion to Dismiss Count 2 is denied.

### G. Equal Protection Claim

In Count 3, Plaintiff alleges Defendants imposed different standards on Clemens in considering his application for a liquor license than other applicants and holders of liquor licenses—a "class of one" equal protection claim. The denial of the liquor license was based on an allegation that Clemens lacked the requisite "character" to hold such a license, while the Village President's son was not similarly sanctioned despite failing to make tax payments to the State of Illinois. Plaintiff asserts it was subjected to a far different standard and more rigorous scrutiny than the prior applicant for a liquor license. Defendant contends Count III should be dismissed because Plaintiff has no equal protection right to be issued a liquor license.

The Supreme Court has recognized that a plaintiff may bring an equal protection claim alleging he has suffered discrimination as a "class of one"—that is, regardless of his membership in any protected class. *Village of Willowbrook v. Olech*, 528 U.S. 562, 563-64 (2000). To survive a motion to dismiss on a class-of-one claim, a plaintiff must allege he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685-86 (7th Cir. 2013) (quoting *Village of Willowbrook*, 528 U.S. at 564).

Additionally, in class-of-one claims challenging the government's execution of alleged discretionary functions, plaintiffs must ordinarily point to evidence that individuals similarly situated to themselves received different treatment; in most cases,

this is necessary to "distinguish between unfortunate mistakes and actionable, deliberate discrimination." *See Geinosky v. City of Chi.*, 675 F.3d 743, 747-48 (7th Cir. 2012). However, as the court in *Geinosky* explained, there are circumstances where comparators are unnecessary—instances of official misconduct whose deviation from the benign application of discretion is readily apparent standing alone. *Id.* at 748. In *Geinosky*, the court found that where a plaintiff had received 24 dubious parking tickets over a two-year period, requiring him to point to other citizens with similar driving habits who had not been so treated would be both unrealistic and unhelpful. *Id.*

In both *Brunson* and *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995), the Seventh Circuit determined that an equal protection "class-of-one" claim should proceed against the liquor commissioner and municipality after plaintiffs demonstrated the liquor commissioner showed "substantial animus" and "sheer vindictiveness" towards the liquor license applicants. *Brunson*, 843 F.3d at 708; *Esmail*, 53 F.3d at 178.

In its Order, the Illinois Liquor Control Commission stated the following:

> The subjectivity of a "character without reputation analysis" is particularly acute in the comparison of Clemens' and Ben Suerdieck's business related behavior. Again, Ben Suerdieck is President Suerdieck's son and was the prior license holder at the Applicant Address. President Suerdieck negatively assessed Clemens' character based on Clemens' eviction and application related behavior. Clemens, however, does not have a disqualifying criminal record and there is no evidence about his reputation in the community. In contrast, President Suerdieck ignored a character analysis of his son, a liquor license holder, even though President Suerdieck knew his son's liquor license was suspended twice by the State for failing to remit retail sales taxes. *State Commission Transcript, ILCC at p. 208.* Failing to remit the payment of taxes is the collection of taxes from customers but keeping the payments for one's own purposes. This example is not an attempt to portray Ben Suerdieck as lacking character but merely to demonstrate how President Suerdieck's assessment of bad character was, at a minimum, inconsistent and required a balance of a more objective assessment of a person's reputation within

the community. Without such a balance, President Suerdieck's determination of character, especially under the facts of this record, is subjectively clouded and arbitrary.

(Doc. 13-1 at 12). Upon accepting the allegations of the complaint as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds Plaintiff has plausibly alleged Clemens was treated differently than any other potential applicant because of Clemens's eviction of Plaintiff's son and his public airing of grievances before the Village Board. This could plausibly be viewed as evincing "sheer vindictiveness" and "substantial animus" towards Plaintiff. Therefore, the Court denies Defendants' Motion to Dismiss Count 3.

III.    **CONCLUSION**

For all of these reasons, the Court concludes Plaintiff has plausibly alleged First Amendment claims in Counts 1 and 2 and a Fourteenth Amendment Equal Protection claim in Count 3. Defendants Village of Rochester and Joseph Surdieck's Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(6) [Doc. 13] is DENIED.

Defendants shall file an answer or responsive pleading within 14 days of the entry of this Order.

ENTER:  October 15, 2024

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE